**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| ANTHONY JOE # 268638, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JON OZMINT, Director of South ) <br> Carolina Department of Corrections; ) <br> JAMES SLIGH, JR., Division Director; ) <br> D. WATFORD, Case Worker; M. ) <br> GILMORE, Case Worker; MS. REMBERT, ) <br> Case Worker; and MS. JENKINS, ) <br> Grievance Coordinator, ) <br> ) <br> Defendants. ) <br> _____) | C.A. No.: 2:08-0585-PMD-RSC <br><br> **ORDER** |

This matter is before the court on two separate motions by Plaintiff Anthony Joe ("Plaintiff"), seeking a Preliminary Injunction. Plaintiff asserts that he should be granted equitable relief to prevent the Defendants from: (1) continuing to confine him in a cell with another inmate; (2) putting him on lock-up; (3) continuing to confine him in Lieber Correctional Institute; (4) preventing him from transferring to a minimum security or work center facility; (5) denying him the wages he claims he is rightfully due for work earned in a prison work program; (6) denying him access to legal research materials; and (7) denying him basic materials needed to file motions to this court. For the foregoing reasons, Plaintiff's Motions are denied.

## BACKGROUND

Plaintiff is currently incarcerated at Lieber Correctional Institute, serving a 15 year sentence of incarceration for burglary. Plaintiff began his time of incarceration on April 29, 1999. He pled guilty to charges of grand larceny and burglary on August 8, 2000. The sentencing judge sentenced Plaintiff to five years of imprisonment on the grand larceny charge,

but held that after 18 months of imprisonment on that charge, the remainder of the sentence was to be suspended. The 467 days Plaintiff had already spent in prison between arrest and sentencing was counted as time served on his grand larceny charge. Practically, then, the combination of the portion of Plaintiff's grand larceny sentence to be suspended with the portion he had already served meant he essentially had already fulfilled his term of imprisonment on the grand larceny charge as of the date of his sentencing. However, the sentencing judge also sentenced Plaintiff to a term of fifteen years of imprisonment for the burglary charged, and specifically provided that that term of imprisonment was to run consecutively from the end of the term of imprisonment on the grand larceny charge.

Plaintiff has faced a number of disciplinary actions during his time of incarceration with the South Carolina Department of Corrections ("SCDC"). Plaintiff has been charged with 48 separate disciplinary violations, and has been convicted of 33 of these charges.[1] The majority of these have been classified as "major" violations, and include multiple violations each for actions including threatening to inflict bodily harm upon a SCDC employee or fellow inmate, possession of a weapon, and possession and use of illegal drugs. Plaintiff was also involved in an incident on February 5, 2007, where he verbally and physically assaulted a corrections officer by threatening him and throwing a trash can at him. Because of his repeated disciplinary problems, particularly actions of a threatening nature, SCDC officials reclassified Plaintiff as an inmate who presents a security threat. This means that Plaintiff is now subject to certain limitations within the facility, such as being on lock-up more often, limited opportunities for performing work or exercising, and being segregated from other parts of the general prison population.

---

[1] This figure was current as of the filing of all relevant documents for Plaintiff's plea for injunctive relief. Since then, however, it is noted that Plaintiff has been convicted of yet another disciplinary infraction, bringing his current total to 34. This infraction involved threatening to kill Defendants Ozmint and Gilmore, as well as counsel for the Defendants.

2

Furthermore, Plaintiff has lost many "good time" credits he had accumulated. "Good time" credits are earned by SCDC inmates for observing and following the rules of the facility, and refraining from causing disruptions among the prison population. "Good time" credits have the end result of moving an inmate's eventual release date forward in time, and provides a powerful incentive system for inmates to follow the rules. For each month an inmate receives no disciplinary action, he or she receives 20 credits. If an inmate does receive a disciplinary action, however, he or she not only does not receive the 20 credits for that month to which he or she would have otherwise been entitled, but may also, depending on the severity of the offense, lose credits already accumulated. In the present case, due to his persistent misbehavior, Plaintiff not only did not receive 20 credits in many months, but was stripped of the credits he had accumulated. Because of the repeated disciplinary problems, Plaintiff's projected maxout release date was recalculated and pushed back to February 15, 2011.

According to Plaintiff, Defendants have also systematically undertaken an effort to deny him a number of his constitutional rights while he is incarcerated. Plaintiff first alleges that this Court should grant a preliminary injunction preventing Defendants from forcing him to share a cell with other inmates. According to Plaintiff, many cells in Lieber are only designed to house a single inmate, yet prison officials have been housing multiple people in these cells. Plaintiff alleges that this violates the Eighth Amendment prohibition on cruel and unusual punishment, and that having multiple inmates in a cell increases the likelihood of violence between inmates, and indeed asserts that he has been attacked by someone with whom he was forced to share a cell. Plaintiff has alleged that Lieber is overcrowded, and does not staff as many guards as are needed to safeguard the security of inmates. Plaintiff also makes claims of a "mass war" between rival gang factions, and "mass violence" between inmates from downtown Charleston

3

and North Charleston, as well as a war between prisoners from the Charleston area against prisoners from the upstate region of the state.

Plaintiff also alleges that he should no longer be held at Lieber, and is entitled to be transferred to a minimum security facility or work center facility. He says this because he alleges that Defendants have repeatedly wrongfully taken his "good time" credits which would push his release date forward, and that he should have rightfully been released from Lieber by now.

Plaintiff further asserts that Defendants should no longer be allowed to hold him on "lock-up," which he alleges violates his constitutional rights. During certain times of high tension or when they believe there may be danger of violence or an incident, or as punishment for actions which SCDC officials believe may lead to danger of violence or an incident, officials at Lieber subject certain inmates to lock-up, which means that these inmates are confined to their cells, where they must take their meals and spend all their time. During times in lock-up, inmates are not permitted to exercise, participate in work programs, or interact with other inmates except for their cellmates.

Plaintiff also seeks an injunction that would force Defendants to give him the wages to which he is rightfully entitled as a result of his participation in a work program. According to Plaintiff, he performed work while incarcerated for both Williams Tech and Caterpillar, and was paid $.35-$.55 an hour for this work. However, Plaintiff asserts that he should have been paid a higher amount under South Carolina law, which should have been paid into an interest bearing escrow account during this time.

Finally, Plaintiff claims that Defendants have denied him meaningful access to the court system, by denying him access to a law library and denying him materials such as paper and

4

envelopes that he needs to pursue his case. Plaintiff asserts that an injunction must be granted to vindicate his constitutional right to litigate his constitutional claims concerning the conditions of his confinement.

Plaintiff filed his first Motion for Preliminary Injunction on April 14, 2008. He filed his second Motion for Preliminary Injunction on April 23. Defendants filed Responses in Opposition to his first Motion on May 2, and to his second Motion on May 12. The matter was referred to United States Magistrate Judge Robert S. Carr, who issued a Report and Recommendation ("R&R") on June 17. Plaintiff filed timely Objections to this R&R on June 23.

## **DISCUSSION**

In order to issue a preliminary injunction under Rule 65(b), this Court must consider the following four factors: (1) the likelihood of irreparable harm to the plaintiff if the court denies the preliminary injunction; (2) the likelihood of harm to the defendants if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits of his underlying claim; and (4) the public interest. *Blackwelder Furniture Co. v. Sielig Manuf. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).

If a *pro se* prison litigant can show that his constitutional rights are being violated by prison officials, he is likely to prevail on the merits of his claim, and that he will suffer irreparable harm if injunctive relief is not granted, a court may grant injunctive relief to prevent the prison officials from continuing the constitutional violation in question. *See, e.g.*, *Tillery v. Owens*, 907 F.2d 418 (3d Cir. 1990). However, when dealing with matters of policy decisions made by prison officials, the court must recognize that prison officials deal with the problem of balancing security and order against the safeguarding of inmates' rights on a daily basis, and are much better positioned to make such policy decisions than the court system. Therefore,

decisions made by prison officials are generally given a substantial amount of deference. As Justice Powell cogently noted:

> The Herculean obstacles to effective discharge of these duties (of prison administrators) are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism. Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities.

*Procunier v. Martinez*, 416 U.S, 396, 404-05 (1974). Therefore, in order for this court to invalidate the decision of state corrections officials and grant injunctive relief, a plaintiff must clearly demonstrate that the public interest is served by granting him injunctive relief, and that granting such relief would impose no great hardship upon the officials or the prison system as a whole.

Here, Plaintiff has asserted that forcing him to stay imprisoned beyond his rightful release date constitutes an irreparable harm, and that merely releasing him or transferring him would not present any sort of harm to defendants. Plaintiff further asserts that allowing inmates to be released when their sentences of imprisonment are rightfully satisfied is in the public interest. However, because Plaintiff has not demonstrated any sort of likelihood of success on the merits on any of his claims, his Motions are denied and the court need not and does not address any other issues with regard to Plaintiff's claims for injunctive relief under rule 65(b).

**I.   Plaintiff's Claim for Injunctive Relief Against Him Being Misclassified, Held in Lock Up, and Held at Lieber**

Plaintiff asserts that Defendants violated his constitutional rights when he was reclassified as a security threat, he was confined to lock-up for certain periods of time, he was forced to share a cell with another inmate due to overcrowding, and he was not allowed to transfer to a minimum security facility. Plaintiff has failed to show a likelihood of success on the merits on any of these claims, and his claims for injunctive relief are accordingly denied.

Plaintiff alleges that he was reclassified as retribution for his participation as a witness in a matter brought by a fellow inmate against a guard at Lieber alleging brutality. However, he has provided no evidence of this beyond his own vague, conclusory, self-serving statement to that effect. On the other hand, Defendants have introduced evidence that Plaintiff has faced myriad disciplinary issues since the inception of his incarceration, accumulating 33 disciplinary convictions since 2000. These were far from mere bureaucratic infractions, as Plaintiff's voluminous disciplinary history includes: two convictions for possession of a weapon, seven convictions for threatening to inflict bodily harm upon a guard or fellow inmate, and four convictions for use and possession of a controlled substance. This includes an incident where Plaintiff assaulted a prison guard with a garbage can. Given this ample evidence that Plaintiff was, in fact, a great threat to the security of Lieber guards and officials as well as his fellow inmates, Defendants' contention that Plaintiff was reclassified solely in order to better maintain order at the facility is well-supported by the bulk of the available evidence. Accordingly, Plaintiff has failed to demonstrate a likelihood of success on this claim, and injunctive relief is denied on this allegation.

Plaintiff's next allegation is that Defendants violated his constitutional rights by putting him on "lock-up," where he is not allowed to exercise or interact with inmates in the general population. However, prison officials are given a substantial amount of deference to determine whether to segregate an inmate or group of inmates because of a perceived threat to security or the administration of order within a prison facility. *See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469-70 (4th Cir. 1999) (holding that it did not violate a large group of inmates' constitutional rights when they were all placed on administrative segregation, where such segregation was "rationally related to the furtherance of the legitimate end of prison security"). When deciding whether or not the decision to place the inmate in a segregated classification from the general inmate population violated that inmate's constitutional rights, a court looks to whether or not the prisoner was subject to much greater hardship than he or she would have been subject to in the general population. The Fourth Circuit has required a great showing of hardship in order for inmates to satisfy this requirement. *See, e.g.*, *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (holding that where inmates were kept in solitary confinement for six months, and that the cells were unsanitary, vermin-infested, flooded from the toilets on the floor above, kept at very high temperatures, and they received cold food in small portions, only infrequently received clean clothes and linens, and were not allowed to participate in exercise, education, or religious activities at the prison, these conditions "were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life").

Here, Plaintiff plainly has failed to meet this requirement. The record clearly demonstrates that Plaintiff was put in "lock-up" because he has repeatedly shown himself to be a disruptive presence and a threat to SCDC personnel and his fellow inmates. Plaintiff has made

8

no allegation or showing, furthermore, of any way in which the privileges available to the general inmate population at Lieber but unavailable to inmates in "lock-up" is so extreme as to constitute a violation of his constitutional rights.  Accordingly, Plaintiff has failed to show a likelihood of success on the merits with regard to this claim, and the court denies his motion for injunctive relief on this claim.

Plaintiff also requests injunctive relief in the form of a requirement that SCDC Prison officials must provide inmates with some opportunity for exercise.  Prisoners do have a constitutional right to receive some sort of opportunity for physical activity.  However, this right may be curtailed, especially if officials have a compelling reason such as security concerns.  Any deprivation of a prisoner's right to exercise only implicates the inmate's constitutional rights if it is so strict and goes on for an indefinite period of time such that it adversely affects the inmate's health.  *See Sweet v. South Carolina Dept. of Corrections*, 529 F.2d 854, 866 (4th Cir. 1975) ("[I]ndefinite limitation on exercise may be harmful to a prisoner's health, and, if so, would amount to 'cruel and unusual punishment.'"); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) ("Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened."). However, as explained above, courts must give state corrections officials substantial deference in making decisions, including whether to curtail inmates' exercise rights to preserve safety, to enact discipline, or for some other reason.  For this reason, courts have generally allowed corrections officials to enact many types of restrictions upon inmates' exercise rights without violating those inmates' constitutional rights.  *See, e.g.*, *Capps v. Atiyeh*, 559 F. Supp. 894, 907 (D. Ore. 1983) (holding that no violation occurred where inmates were held in small cells for 45 days without opportunity to exercise due to increased safety concerns).  Furthermore, when

determining whether or not a deprivation of exercise violated an inmate's constitutional rights, courts have considered as one factor whether or not such a deprivation was brought about by the inmate's own conduct or tendency to escape. *See Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir. 1992) (holding that courts should consider whether or not an inmate's violent behavior made it unreasonable or dangerous for officials to allow that inmate to exercise); *see also Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001) (holding that no constitutional violation occurred when prison officials confined an inmate to his cell for four consecutive 90-day periods, with no opportunity to get out-of-cell exercise, due to that inmate's repeated serious violations of prison rules).

Here, Plaintiff has been periodically placed on "lock-up" confinement due to his own disciplinary infractions. During these periods, Plaintiff's ability to exercise is restricted. However, a restriction on an inmate's right to exercise, even a complete deprivation of the right to exercise for a temporary period of time, does not rise to the level of a constitutional violation unless it is so extreme that it has an adverse impact on the inmate's mental or physical well-being. This is particularly true when the deprivation is brought about by the inmate's own dangerous behavior, which leads officials to segregate the inmate from exercising with other inmates for safety or disciplinary reasons. In the present case, Defendants only put Plaintiff on "lock-up" and deprived him of exercise rights because Plaintiff repeatedly acted in a disruptive, violent, and threatening manner. Defendants were therefore well within their discretion to place him on "lock-up" and deny him exercise privileges. Accordingly, Plaintiff has not established any likelihood of success on the merits of this claim, and his claim for injunctive relief is accordingly denied.

Plaintiff further alleges that his constitutional rights have been violated by forcing him to share a cell with one or more other inmates at Lieber. Plaintiff asserts that Lieber is so overcrowded as to deprive him of basic living standards, and requests that this court grant an injunction preventing Defendants from continuing to place him in a cell with other inmates. Plaintiff has cited multiple cases which he asserts support his claim that overcrowding can constitute a violation of an inmates' constitutional rights.

However, one of the very cases to which Plaintiff cites articulates the very high standard which must be present in order for a court to find that multiple-celling violates an inmates' rights:

> As in the main prison population, this double-celling is not of itself cruel and unusual punishment. Double-celling in disciplinary confinement to a great extent defeats the purpose of segregation, but that does not make it unconstitutional. The psychological and physical effects of segregation are doubtlessly compounded when inmates are crowded into small cells. But there is not enough evidence in the record for me to find that the double-celling in segregation denies the inmates any of life's basic needs.

*Capps v. Atiyeh*, 559 F. Supp. 894, 907 (D. Ore. 1983). Multiple-celling of inmates is only a constitutional violation, then, when it "denies the inmates any of life's basic needs." *Id*. Plaintiff has cited to one case in which a court did in fact find that double-celling inmates was a violation of their constitutional rights. *Tillery v. Owens*, 907 F.2d 418 (3d Cir. 1990). However, that court did so based upon its examination of the totality of the circumstances of those inmates' confinement, which included the court's conclusion that "almost every element of the physical plant and provision of services of SCIP falls below constitutional norms." *Id*. at 427. However, that same court upheld the constitutionality of double-celling where "there had been no finding that basic prison facilities such as plumbing and ventilation were inadequate." *Id*. (citing *Union County Jail Inmates v. Di Buono*, 713 F.2d 984, 1001 n. 30 (3d Cir. 1983)). The Supreme Court

11

of the United States has held that double-celling does not violate an inmate's constitutional rights where it does not lead to "deprivations of essential food, medical care or sanitation. . . . or create other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).

The Fourth Circuit has weighed in on this issue as well, holding that "[i]t is clear that double or triple celling inmates is not *per se* unconstitutional. But, overcrowding accompanied by unsanitary and dangerous conditions can constitute an Eighth Amendment violation provided an identifiable human need is being deprived." *Williams v. Griffin*, 952 F.2d 820, 825 (4th Cir. 1991). Plaintiff has not made any allegations concerning Lieber's sanitary condition. While Plaintiff has made vague allegations about violence among different factions of inmates and made conclusory assertions about Defendants' indifference to this alleged culture of violence, he has not done so sufficiently to establish the necessary likelihood of success on the merits which would justify this Court granting him the requested injunctive relief. If anything, the record in this case regarding the handling of Plaintiff reassures the court that Defendants and other SCDC personnel at Lieber are responsive to inmates who pose a threat of violence and disruption. Plaintiff, an inmate who has hidden drugs and weapons in his cell and threatened and even physically attacked other inmates and guards, has been cited and convicted for a number of disciplinary infractions, which has resulted in him being reclassified and segregated from the general inmate population, as well as having the date of his release back into society being pushed back. This information shows the staff at Lieber to be proactive about identifying which inmates pose a security threat, attempting to push back the date at which these inmates will be reintroduced to society, and moving them out of the general inmate population to reduce the likelihood of violence between inmates. Given this, the court cannot accept Plaintiff's

12

unsupported assertions about Defendants' indifference to or even fostering of a widespread culture of violence at Lieber. Putting multiple inmates in a given cell may be less than optimal, but it is a simple reality of prison administration, and it is certainly not the place of this Court to interfere in matters of prison administration except when a clear constitutional violation has taken place. Plaintiff has, therefore, failed to show that overcrowding and multiple-celling has somehow acted to deprive him of a basic human need, and accordingly has not demonstrated any likelihood of success on the merits of this claim.

Plaintiff also requests injunctive release mandating that Defendants transfer Plaintiff from Lieber to a minimum security facility or some sort of work release facility. Plaintiff does not make clear the legal basis for this requested relief. As detailed above, the record indicates that Plaintiff has shown himself to be a disruptive presence and security threat during his time of incarceration at Lieber, and still has several years of imprisonment left on the sentence for his burglary conviction. Accordingly, Plaintiff has shown no likelihood of success on the merits of this claim, and the court cannot grant his request for an injunction on these grounds.

Plaintiff's request for an injunction requiring Defendants to apply the 467 days he spent in jail between the time of his arrest and the date of his sentencing as time served towards his burglary sentence also fails as a matter of law. Plaintiff asserts that it violates his constitutional rights that he has not been given time served credit for this time spent in jail. However, the sentencing judge was quite clear that the 467 days were to be counted as time served towards the 18 month sentence of imprisonment on the grand larceny conviction, and that the 15 year sentence of imprisonment was to be served consecutively from the completion of Plaintiff's grand larceny sentence. Accordingly, Plaintiff has received full credit for the time he spent in jail before his sentencing in accordance with the sentencing judge's instructions, and no

constitutional violation has occurred. Sine Plaintiff has not established a likelihood of success on the merits of this claim, the court will not grant his request for injunctive relief on this ground.

Plaintiff finally asserts that Defendants violated his constitutional rights by unfairly taking away his "good time" credits, which resulted in his maxout release date being pushed back. Plaintiff asserts that these credits were taken from him by Defendants out of personal spite and vindictiveness, and that he has been deprived of his rightful release because of this. However, as noted above, SCDC policy is that an inmate earns 20 "good time" credits for every month he spends incarcerated without being convicted of a disciplinary infraction. If convicted, he not only does not receive 20 credits for that month, he can also lose previously accumulated credits. Here, Plaintiff was constantly in disciplinary problems, and has been convicted of 33 separate disciplinary infractions, many of them major, during his time in the SCDC system.

When initially incarcerated, every SCDC inmate is given a projected release date, which assumes that the inmate is not going to be convicted of a disciplinary infraction and will therefore be earning 20 "good time" credits each month. When convicted of a disciplinary violation, this projected release date is recalculated at regular intervals to account for the resulting loss of credits. These recalculated projected release dates still, however, assume that the inmate will not be convicted of any further disciplinary infractions, so must be recalculated after each and every violation of SCDC disciplinary rules. Defendants have produced their records dealing with the multiple recalculations of Plaintiff's sentence, which shows that his projected release date was pushed back multiple times to account for his multiple disciplinary convictions. Plaintiff's current projected release date is February 15, 2011, which would still be well short of the fifteen years of incarceration to which he was sentenced on his burglary conviction. This is certainly not a grounds for a constitutional violation, and this court will not

14

grant Plaintiff injunctive relief on this claim, as he has shown no likelihood of success on the merits of this claim.

## II.     Plaintiff's Claim for Injunctive Relief Resulting from Defendants' Withholding from Him Wages He Rightfully Earned While Working

Plaintiff's next claim is that he participated in a number of work projects while incarcerated at Lieber, and that he has not been adequately paid for his labor. While Defendants have produced records that show that money has in fact been placed into an account for Plaintiff to compensate him for his labor, Plaintiff asserts that he has been compensated at a lower rate than what is required by law, and that Defendants have wrongfully withheld from him money he was planning on using to reestablish his life upon his release from Lieber.

As explained above, Plaintiff has failed to show any likelihood of success on the merits of any of his claims for injunctive relief against being held at Lieber. Plaintiff is therefore not going to be released from prison in the immediate future as a result of this legal action. Generally speaking, courts will only grant injunctive relief if the plaintiff would otherwise suffer irreparable harm. Financial loss is very rarely viewed by courts as irreparable harm, and for this reason, courts generally will not grant injunctive relief in financial matters, since the plaintiff can fully litigate the underlying substantive claim and, if he or she is successful, seek damages and pre-judgment interest on the claim and be fully compensated for his or her harm. Here, Plaintiff seeks injunctive relief in the form of this court requiring Defendants to provide Plaintiff with the funds to which he is entitled. However, since all of Plaintiff's basic life needs are being provided for him during his incarceration by SCDC at no financial cost to him, if Plaintiff has to wait until the ultimate resolution of this litigation to receive the funds to which he believes he is entitled, he will suffer no irreparable harm. Accordingly, without expressing any judgment on

the merits of Plaintiff's claim, the court holds that resolution of this issue is properly reserved for dispositive motions or a trial, and not a motion for injunctive relief, and Plaintiff's claim for injunctive relief on this ground accordingly fails as a matter of law.

### III.     Plaintiff's Claim for Injunctive Relief Resulting from Defendants' Denying Him Access to a Law Library and Materials Needed to Pursue This Litigation

Plaintiff further alleges that Defendants have denied him access to the court system, and have denied him access to an adequate law library to conduct this litigation. "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries . . . ." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, this does not mean that prisons must provide inmates with completely unrestricted access to such facilities. While total denial of access to legal research materials is unconstitutional, prisons may impose reasonable restrictions on such access as long as inmates can continue to conduct "meaningful" legal research. *Williams v. Leeke*, 584 F.2d 1336, 1340 (4th Cir. 1978). *See also Blank v. Vannatta*, 115 Fed. Appx. 884, 886 (7th Cir. 2004) (holding that no constitutional violation had occurred where inmate was placed in "administrative segregation" which resulted in restrictions on law library access); *Penrod v. Zavaras*, 94 F.3d 1399, 1403-04 (10th Cir. 1996) 1996) (holding that no constitutional violation had occurred when corrections officials had to restrict law library access due to security problems). Meaningful legal research means access to resources that are "adequate to permit an inmate to explore possible theories of relief, determine the facts that must be present to make out claims under any available theories, and to frame pleadings before the federal or state courts should he wish to do so." *Strickler v. Waters*, 989 F.2d 1375, 1386 (4th Cir. 1993). In order to establish a violation of his right to access to the courts, an inmate must

demonstrate with some specificity that this right was interfered with, and must also show that this interference with his rights resulted in some sort of actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

In the present case, Plaintiff has failed to establish any sort of evidence that would lead this court to believe that Defendants have somehow denied him meaningful access to the court system, nor has he shown how such an alleged rights violation caused him actual injury. Indeed, the record shows that Plaintiff has not only filed this case, but filed no fewer than nineteen distinct motions, requests, notices, and responses in the present case.[2] This figure does not include the documents Plaintiff has filed in his other case pending with this Court, nor does it take into account the four other cases Plaintiff has previously filed with this Court since his initial incarceration. Furthermore, the documents Plaintiff has filed contain numerous citations to precedent and legal arguments, so it is quite clear to the Court that Plaintiff has access to legal materials in some form. Given how prolific Plaintiff has been as a litigant, the Court cannot possibly see, then, how Defendants can somehow be responsible for denying Plaintiff access to the court system or not providing him with all the materials he needs, because Plaintiff has certainly taken full advantage of the myriad opportunities offered by the federal courts system to protect and vindicate his constitutional rights.

---

[2] Plaintiff has filed: a Complaint, a Motion for Leave to Proceed in forma pauperis, a Motion for Default Judgment, a Motion to Strike Defendants' Motion for an Extension of Time, the present two Motions for a Preliminary Injunction, a set of Declarations by some of Plaintiff's fellow inmates, a request for discovery, Objections to the Magistrate Judge's R&R, four subsequent Motions to Compel Discovery, a Notice to the court concerning SCDC policies, a Reply to this Court's order granting Defendants an extension of time, a request for entry of default, a Motion to Appoint Counsel, a Motion for Extension of Time of his own, another Motion to Compel Discovery.

## **CONCLUSION**

For the foregoing reasons, the court adopts the recommendation of the Magistrate Judge and **ORDERS** that Plaintiff's Motions for Injunctive Relief are **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**November 21, 2008**

18