RECEIVED
USDC, CLERK, CHARLESTON, S

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA    2009 JUN 29 P 2: 3

Anthony Joe, #2678638,              )    C.A. No. 2:08-0585-PMD-RSC
                                    )
             Plaintiff,             )
                                    )
          -versus-                  )    **REPORT AND RECOMMENDATION**
                                    )
Jon Ozmint, Director of SCDC;       )
James Slight, Jr., Division         )
Director; D. Watford,               )
Caseworker; M. Gilmore, Head        )
Caseworker; Ms. NFN Rembert,        )
Caseworker; and Ms. Jenkins,        )
Grievance Coordinator,              )
                                    )
             Defendants.            )

      This civil rights action under 42 U.S.C. § 1983[1] (West 1994

& Supp. 1998) brought by a state prisoner proceeding pro se and

in forma pauperis is before the undersigned United States

Magistrate Judge for a report and recommendation on the

------

[1] Section 1983, titled a civil action for deprivation of rights
reads in relevant portion:
      Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or the
District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress, except that in
any action brought against a judicial officer for an act or
omission taken in such officer's judicial capacity, injunctive
relief shall not be granted unless a declaratory decree was
violated or declaratory relief was unavailable.

defendants' motion for summary judgment filed on September 3, 2008.  28 U.S.C. § 636(b).

On February 19, 2008, the plaintiff Anthony Joe, brought this action and named as defendants Jon Ozmint, Director of the South Carolina Department of Corrections (SCDC); James Slight, Jr., Division Director of SCDC; D. Watford, Caseworker at SCDC; M. Gilmore, Head Caseworker at SCDC; Ms. NFN Rembert, Caseworker at SCDC; and Ms. Jenkins, Grievance Coordinator at SCDC.  Joe complains about his conditions of confinement at Leiber Correctional Institution[2] including his classification as a "violent" offender, the prison's maintenance of allegedly "false information" in his institutional files, the use of excessive force in an incident between Plaintiff and Officer Summerson on February 5, 2007, the denial of medical treatment, overcrowding, job discrimination, prison industry wages, and the refusal to process certain grievances.  He also challenges the SCDC calculation of his sentence length.

He sued the defendants in their individual and official capacities.  He seeks,

> a declaration that the acts and omissions described herein
> violated Plaintiff's rights under the constitution & laws of
> the United States, a preliminary[3] & permanent injunction
> against the defendants, nominal damages, punitive damages in

---

[2] Joe is presently housed at Lee Correctional Institution.
[3] Joe's motion for a preliminary injunction was denied on November 21, 2008, by United States District Judge P. Michael Duffy.

the amount of $_____ against each defendant, a jury trial on all triable issues, Plaintiff's costs in this suit, any additional relief this court deems, just, proper, & equitable." (Complaint pg. 5) (blank in the original). The defendants filed a motion for summary judgment on

September 3, 2008, as well as various exhibits and affidavits. On September 8, 2008, the plaintiff was provided copies of the motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The plaintiff opposed the motion on November 11, 2008, in a 93 page memorandum and voluminous exhibits.  Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof.  Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party

3

opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim.  The party opposing summary judgment must then point to facts evidencing a genuine issue for trial.  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants.  See Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor.  Id., 477 U.S. at 252.

## BACKGROUND

Judge Duffy set out Plaintiff's background information in his November Order as follows:

4

Plaintiff is currently incarcerated at Leiber Correctional Institute, serving a 15 year sentence of incarceration for burglary. Plaintiff began his time of incarceration on April 29, 1999. He pled guilty to charges of grand larceny and burglary on August 8, 2000. The sentencing judge sentenced Plaintiff to five years of imprisonment on the grand larceny charge but held that after 18 months of imprisonment on that charge, the remainder of the sentence was to be suspended. The 467 days Plaintiff had already spent in prison between arrest and sentencing was counted as time served on his grand larceny charge. Practically, then, the combination of the portion of Plaintiff's grand larceny sentence to be suspended with the portion he had already served meant he essentially had already fulfilled his term of imprisonment on the grand larceny charge as of the date of his sentencing. However, the sentencing judge also sentenced Plaintiff to a term of fifteen years of imprisonment for the burglary charged, and specifically provided that term of imprisonment was to run consecutively from the end of the term of imprisonment on the grand larceny charge.

Plaintiff has faced a number of disciplinary actions during his time of incarceration with the SCDC. Plaintiff has been charged with 49 separate disciplinary violations, and has been convicted of 33[4] of these charges. The majority of these have been classified as "major" violations, and include multiple violations each for actions including threatening to inflict bodily harm upon a SCDC employee or fellow inmate, possession of a weapon, and possession and use of illegal drugs. Plaintiff was also involved in an incident on February 5, 2007, where he verbally and physically assaulted a corrections officer by threatening him and throwing a trash can at him. Because of his repeated disciplinary problems, particularly actions of a threatening nature, SCDC officials reclassified Plaintiff as an inmate who presents a security threat. This means that Plaintiff is now subject to certain limitations within the facility, such as being on lock-up more often, limited opportunities for performing work or exercising, and being segregated from other parts of the general prison

---

[4] This figure was current as of the filing of all relevant documents for Plaintiff's plea for injunctive relief. Since then, however, it is noted that Plaintiff has been convicted of yet another disciplinary infraction, bringing his current total to 34. This infraction involved threatening to kill Defendants Ozmint and Gilmore, as well as counsel for the Defendants.

population.

Furthermore, Plaintiff has lost many "good time" credits he had accumulated. "Good time" credits are earned by SCDC inmates for observing and following the rules of the facility, and refraining from causing disruptions among the prison population. "Good time" credits have the end result of moving an inmate's eventual release date forward in time, and provides a powerful incentive system for inmates to follow the rules. For each month an inmate receives no disciplinary action, he or she receives 20 credits. If an inmate does receive a disciplinary action, however, he or she not only does not receive the 20 credits for that month to which he or she would have otherwise been entitled, but may also, depending on the severity of the offense, lose credits already accumulated. In the present case, due to his persistent misbehavior, Plaintiff not only did not receive 20 credits in many months, but was stripped of the credits he had accumulated. Because of the repeated disciplinary problems, Plaintiff's projected maxout release date was recalculated and pushed back to February 15, 2011.

Additionally, due to the nature of the burglary offense, Plaintiff is required to serve at least one-third of his fifteen year sentence before being eligible for parole. (Def. Exhibit 5, Commitment Application Inquiry). Plaintiff's first parole hearing was on November, 16, 2005, at which time parole was denied. (Def. Exhibit 6, Inmate Parole History; see also Affidavit of Michael Stobbe). Plaintff's second parole hearing was on October 24, 2007, and parole was again denied. Id.

## DISCUSSION

A review of the record and relevant case law reveals that the defendants' summary judgment motion should be granted.

As an initial matter, Plaintiff's claims against these defendants in their official capacities seeking monetary damages

6

are barred by the Eleventh Amendment.  The Eleventh Amendment
bars suits in federal courts for money damages against an
"unconsenting State." Edelman v. Jordan, 415 U.S. 651, 663, 94
S.Ct. 1347 (1974).  This immunity extends to "arm[s] of the
State," Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429
U.S. 274, 280, 97 S.Ct. 568(1974), including state agencies and
state officers acting in their official capacity.  Gray v. Laws,
51 F.3d 426, 430 (4th Cir. 1995).  The individually-named
Defendants are the director of the SCDC, the Division Director of
the SCDC, and other officers of the SCDC.  Therefore, to the
extent Plaintiff sued the defendants in their "official
capacities," Defendants, as officers of the state, are immune
from suit as they are treated as "arms of the State."  Will v.
Michigan Dep't of State Police, 491 U.S. 58, 70, 109 S.Ct. 2304
(1989).  However, to the extent Plaintiff seeks damages from the
individuals in their individual capacities, the individual
Defendants are not protected by Eleventh Amendment immunity.

Additionally, to the extent Plaintiff seeks an injunction
prohibiting certain conditions of confinement at Lieber
Correctional Institution where Plaintiff was confined when he
filed this action and which are the subject of many of his
allegations of unconstitutional conditions of confinement, that
prayer is moot.  On June 30, 2008, Plaintiff was transferred from
Lieber to Lee Correctional Institution where he now resides.

Since Plaintiff is no longer subjected to the complained of conditions of confinement at Lieber, his prayer for injunctive relief is moot. <u>Williams v. Griffin</u>, 952 F.2d 820, 825 (4th Cir. 1991); <u>Ross v. Reed</u>, 719 F.2d 689 693 (4th Cir. 1983). His claims for money damages are not mooted by his transfer. <u>Williams</u>, at 823.

Plaintiff's claims will be reviewed seriatim.

First, in his complaint the plaintiff alleges SCDC Defendants Gilmore, Rembert, and Watford violated his due process rights when they allegedly failed to investigate and act upon his claims that his sentence was miscalculated, and that good time credits were being taken away from him unlawfully. He alleges that these defendants were all personally involved somehow in calculating Petitioner's maximum expiration date and/or in responding to grievances concerning the same. By way of relief, Plaintiff seeks monetary damages and a declaration that the defendants calculations are incorrect and will cause him to serve more time than he is legally required to serve.

Because Plaintiff's claims, if successful, would necessarily call into question his continued confinement after a certain date, that is, the validity of his sentence beyond the earlier date he claims is the properly calculated expiration date of his sentence is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

In <u>Heck</u>, a state prisoner, convicted of voluntary manslaughter, brought a civil rights action against prosecutors and a police investigator, asserting that the defendants, acting under color of state law had engaged in an unlawful, unreasonable and arbitrary investigation, leading to Heck's arrest, specifically he alleged they had knowingly destroyed evidence that could have proven Heck's innocence and caused an illegal voice identification procedure to be used at his state trial. <u>Heck</u>, 512 U.S. at 479. The Supreme Court rebuffed such an effort as follows:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

<u>Heck</u>, 512 U.S. at 486-87 (emphasis added) (footnote omitted).

Although <u>Heck</u> was decided in the context of a plaintiff who was essentially attacking a conviction, the reasoning of <u>Heck</u> has been extended to prisoners who are attacking sentence calculations and loss of good time credits. <u>Edwards v. Balisok</u>, 115 S.Ct. 1584, 1587-88 (1997). As the Court explained in <u>Edwards</u>, a "claim for declaratory relief and money damages, based

on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." Id., Pierce v. Freeman, 121 F.3d 699 (4th Cir. 1997); Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002) ("When read together, there is a logical and coherent progression of Supreme Court jurisprudence clarifying when § 1983 is unavailable: whenever the challenge ultimately attacks the 'core of habeas'-the validity of the continued conviction or the fact or length of the sentence-a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition against his immediate custodian." Plaintiff can seek the restoration of his good time credits in federal court only by way of a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

The reasoning of Heck v. Humphrey and its progeny is that a prisoner should not be able to use a suit for damages to get around the procedures that have been established for challenging the lawfulness of continued confinement. It is irrelevant whether the challenged confinement is pursuant to a judgment imposing a sentence or an administrative refusal to shorten the sentence by awarding good-time credits. See, e.g., Miller v. Indiana Dept. of Corrections, 75 F.3d 330, 331 (7th Cir. 1996); Stevens v. South Carolina Department of Corrections, 2006 WL

10

1074996 (D.S.C. 2006); see also Clemente v. Allen, 120 F.3d 703,
705 (7th Cir. 1997) (Bivens suit seeking damages for alleged
miscalculation of federal prisoner's sentence barred by Heck);
Rooding v. Peters, 92 F.3d 578, 580-81 (7th Cir. 1996) (suit for
damages under § 1983 for miscalculation of sentence credits did
not accrue until plaintiff prevailed in state mandamus action).

Plaintiff does not allege that any state or federal court
has ever found that his sentence was miscalculated or good time
credits taken away or not awarded properly, nor does he present
any exhibits which indicate that he has prevailed in such an
action regarding the calculation of the length of his sentence.
To the contrary, Plaintiff filed an appeal in the South Carolina
Administrative Law division claiming that his sentence was being
miscalculated and that he should be entitled to an additional 467
days reduction in his sentence.  The appeal was dismissed by the
administrative law judge on February 6, 2006, who found that
"Appellant has failed to meet his burden of proof to show that
the Sentence calculation is erroneous."  (Pl. Ex. 15, Order of
Dismissal).  Therefore, until he has successfully challenged his
sentence calculation in state court or in federal habeas corpus,
he is barred from seeking vindication in this suit for damages.[5]

---

[5] Conversely, when the challenge is to a condition of
confinement such that a finding in Plaintiff's favor would not
alter his sentence, release date, or conviction, an action under
§ 1983 is appropriate.  Muhammad v. Close, 540 U.S. 749, 124
S.Ct. 1303 (2004).

Miller, 75 F.3d at 331.  In sum, the court should reject these claims challenging his release date calculation.

Second, Plaintiff made various claims that his prison grievances were not properly processed and/or investigated. These claims are not cognizable under 42 U.S.C. § 1983, as there is no constitutional right to access to a prison grievance procedure.  See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (existence of a prison grievance procedure does not confer any substantive right upon inmates); Brown v. Dodson, 863 F.Supp. 284 (W.D. Va. 1994) (inmates do not have a constitutionally protected right to a grievance procedure); Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D. Ill. 1982) (even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim); Spencer v. Moore, 638 F.Supp. 315, 316 (E.D. Mo. 1986) (holding that an inmate grievance procedure is not constitutionally required); see also McGuire v. Forr, No. 94-6884, 1996 WL 131130, at 1 (E.D. Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) (creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance

12

procedure).  Therefore, Plaintiff's complaints about the
processing of his internal prison grievances do not state a claim
for which relief can be granted under § 1983 and they should be
dismissed on that basis.

Third, Plaintiff claims that there is false information in
his institutional file and that although he has complained to
Defendants Gilmore, Rembert and Watford about the alleged false
information, they have not corrected the information in his
files.  Plaintiff challenges as false the identification of a
prior, out-of-state criminal conviction in his institutional
record.  (Complaint ¶¶ 15 - 16) (See also, Pl. ex. 12, SCDC
Inmate Prior Commitments/Convictions).  Plaintiff claims that
this "false information" was used to label him "parole
ineligible."

Prisoners have a right to the correction of misinformation
in their prison files when there is false information in their
files which is relied upon to a constitutionally significant
degree.  See Paine v. Baker, 595 F.2d 197 (4th Cir. 1979).

It appears that the plaintiff has not established a question
of fact with regard to this claim.  First, as indicated on
Plaintiff's NCIC rap sheet, he was indeed convicted of four (4)
counts of aggravated burglary in Memphis, Tennessee in 1991.
(Pl. Ex. 13, NCIC criminal history record) (See also affidavits
of Michael Stobbe and Martha Gilmore).  This information is not

13

"false" as he alleged.  Second, as evidenced by the fact that Plaintiff has already been up for parole on two separate occasions, he is clearly not "parole ineligible" as he alleged. (Pl. Ex. 6 and Affidavit of Michael Stobbe).  Nor is Plaintiff required to serve 85% of his sentence as he alleged.  (Affidavit of Michael Stobbe).  His factual allegations are baseless and summary judgment is appropriate.

Fourth, Plaintiff claims that he has been improperly placed in custody level "Security Detention" because he was designated as a member of a security threat group (STG) as well as his lengthy disciplinary record in violation of his procedural and substantive due process rights.  He complains that as a result he is not allowed to exercise or to interact with other prisoners in the general population.  The defendants are entitled to summary judgment on these claims.

Prison officials are given a substantial amount of deference to determine whether to segregate an inmate or group of inmates because of a perceived threat to security or the administration of order within a prison facility.  See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469-70 (4th Cir. 1999) (holding that it did not violate a large group of inmates' constitutional rights when they were all placed on administrative segregation, where such segregation was "rationally related to the furtherance of

14

the legitimate end of prison security"). When deciding whether the decision to place the inmate in a segregated classification from the general inmate population violated that inmate's constitutional rights, a court looks to whether the prisoner was subject to much greater hardships in segregation than he or she would have been subject to in the general population. The Fourth Circuit has required a great showing of hardship in order for inmates to satisfy this requirement. See, e.g., Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (holding that where inmates were kept in solitary confinement in cells infested with vermin, smeared with human feces and urine, flooded with water, and unbearably hot, received food cold and in small portions, infrequently received clean clothing, linen, and bedding, were only permitted to leave their cells three to four times per week, and were denied outside recreation, educational, or religious services, conditions in administrative segregation were not so atypical that exposure to them for six months imposed significant hardship in relation to ordinary incidents of prison life, as required to support claim that segregation violated inmates' procedural and substantive due process rights). See also, Talley v. Hesse, 91 F.3d 1411, 1413 (10th Cir. 1996); Crowder v. True, 74 F.3d 812, 814-15 (7th Cir. 1996) (per curiam); Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (per curiam), cert. denied, 517 U.S. 1196, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996); Rimmer-Bey v.

15

Brown, 62 F.3d 789, 790-91 (6th Cir. 1995).

Here, Plaintiff has failed to meet this requirement. The record clearly demonstrates that Plaintiff was put in "lock-up" because he has repeatedly shown himself to be a disruptive presence and a threat to SCDC personnel and his fellow inmates. Plaintiff has made no showing, furthermore, of any way in which the privileges available to the general inmate population but unavailable to inmates in "lock-up" are so extreme as to constitute a violation of his constitutional rights. The defendants are entitled to judgment as a matter of law on these claims.

Fifth, Plaintiff alleges that he was subjected to cruel and unusual punishment stemming from a February 5, 2007, incident between himself and corrections officer Summerson. (Complaint ¶¶ 23-32). However, the plaintiff did not allege that any defendant in the instant action did anything to the plaintiff touching on the aforementioned incident. A civil rights plaintiff must allege that he has suffered a deprivation of constitutional magnitude fairly traceable to a named defendant's allegedly unlawful conduct and likely to be redressed by the relief requested. Allen v. Wright, 468 U.S. 737, 751 (1984). Any allegations made by the plaintiff are directed at persons not made a party to this suit. The defendants are entitled to summary judgment on that basis alone.

Sixth, Plaintiff claims that Lieber Correctional Institution is overcrowded (*Complaint* § 39) and that such conditions resulted in a mental health patient being housed in the plaintiff's cell (Complaint ¶ 40) and that overall conditions caused him to fear for his life. (Complaint ¶ 41). None of these allegations appear to be directed towards any particular defendant. To the extent they are directed at defendant Ozmint because he is the Director of the SCDC or at Defendant Sligh because he is the Division Director, they fail because respondeat superior vicarious liability theories are inapplicable in §1983 cases. <u>Monnell v. Department of Social Servs.</u>, 436 U.S. 658, 694,(1978).

Seventh, paragraph 42 of Plaintiff's complaint alleges that Defendant Gilmore is discriminating against Plaintiff by "making sure the jobs on the yard go to white prisoners or black prisoners from Charleston." (Complaint ¶ 42). Plaintiff wholly failed to provide any evidence of this allegation. Defendant Gilmore denies that she discriminated against Plaintiff. (Gilmore affidavit). Plaintiff's ineligibility for placement in work programs is due to his extensive disciplinary history, convictions for major disciplinary infractions, and current placement on SD status as a validated member of a security threat group, not because he is not from Charleston. This claim should fail.

Eighth, Plaintiff alleges that he is being denied access to

17

various rehabilitation programs in violation of the constitution.
(Complaint ¶¶ 43 - 46). However, there is no constitutional
requirement that a prison provide rehabilitation programs to
inmates. See Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988)
(state has no constitutional obligation to provide basic
educational or vocational training programs to prisoners) (citing
Newman v. State of Alabama, 559 F.2d 283, 292 (5th Cir. 1977),
rev'd in part on other grounds sub nom., Alabama v. Pugh, 438
U.S. 781, 98 S.Ct. 3057(1978)); Hoptowit v. Ray, 682 F.2d 1237,
1254-55 (9th Cir. 1982) (individuals serving criminal sentences
have no constitutional right to rehabilitation while in prison);
McCray v. Sullivan, 509 F.2d 1332, 1335 (5th Cir.), cert. denied,
423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975) (failure to
provide rehabilitation, by itself, does not constitute a
violation of Eighth Amendment); Abdul-Akbar v. Department of
Corrs., 910 F.Supp. 986, 1002 (D.Del. 1995) (no right to drug
treatment, employment, or other rehabilitation, education, or
training programs in prison). Plaintiff has failed to allege a
constitutional deprivation and the claim should be dismissed.

Ninth, Plaintiff alleges that he should be paid "prevailing
wages" for his unspecified labor in the prison industries
program. (Complaint ¶¶ 47 - 49). He does not, however, show
that any of these named defendants caused him to go unpaid for
any work or established his wages for the work he allegedly

performed.  Again, vicarious liability does not attach in § 1983 cases.  Monnell v. Department of Social Servs., 436 U.S. 658, 694,(1978).  The defendants are entitled to summary judgment on all Plaintiff's claims.

The defendants also contend that they are entitled to qualified immunity in their individual capacities.  As discussed above, Plaintiff fails to show that the individual defendants violated any of his clearly established constitutional or statutory rights.  Therefore, as an additional or alternate ground for summary judgment, the defendants are entitled to qualified immunity in their individual capacities as to monetary damages.  See, Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982) (Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.).

Finally, the defendants moved to have this action denominated a "strike" within the meaning of the Prison Litigation and Reform Act (PLRA).  It appears that such designation is appropriate.

The federal in forma pauperis statute under which the plaintiff is proceeding in the instant case insures that indigent litigants have meaningful access to the federal courts.  28

U.S.C. § 1915. However, to prevent indigent litigants from filing frivolous lawsuits, the statute authorizes courts to dismiss the suit if it is frivolous or malicious. 28 U.S.C. § 1915(d). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). Federal courts have the power to dismiss both claims based on meritless legal theories and claims with clearly baseless factual contentions. <u>Id</u> at 327. Examples of meritless legal theories are claims where "it is clear the defendants are immune from suit, and claims of infringement of a legal interest which clearly does not exist... . <u>Id.</u> Claims of baseless factual allegations are "claims describing fantastic or delusional scenarios ... . <u>Id.</u> at 328.

Plaintiff's claims in this action fall into both categories. First, the defendants are immune from suit. Further, Plaintiff claims infringement of varied legal interests which do not exist or that do not involve the named defendants. Third, he alleges facts that differ significantly from documented SCDC records. Plaintiffs' suit is frivolous and should be dismissed and counted as a strike pursuant to the court's authority under § 1915.

**CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion for summary judgment be granted, any other outstanding motions be deemed moot, and this

action be denominated a "strike" within the meaning of the Prison Litigation and Reform Act.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

June 29, 2009

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).