# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| ANTHONY JOE # 268638, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:08-585-PMD-RSC |
| | ) | |
| v. | ) | **<u>ORDER</u>** |
| | ) | |
| JON OZMINT, Director of South | ) | |
| Carolina Department of Corrections; | ) | |
| JAMES SLIGH, JR., Division Director; | ) | |
| D. WATFORD, Case Worker; M. | ) | |
| GILMORE, Case Worker; MS. REMBERT, | ) | |
| Case Worker; and MS. JENKINS, | ) | |
| Grievance Coordinator, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court upon Plaintiff Anthony Joe's ("Plaintiff") Objections to a United States Magistrate Judge's Report and Recommendation ("R&R"), which recommended the court grant Defendants' Motion for Summary Judgment, find any other outstanding motions moot, and denominate this action a "strike" within the meaning to the Prison Litigation and Reform Act. Having reviewed the entire record, including the Plaintiff's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## <u>BACKGROUND</u>

Plaintiff is currently incarcerated at Lee Correctional Institution and is serving a 15-year sentence of incarceration for burglary. He began his time of incarceration on April 29, 1999, but pled guilty to charges of grand larceny and burglary on August 8, 2000. The sentencing judge sentenced Plaintiff to five years of imprisonment on the grand larceny charge, but held that after

18 months of imprisonment on that charge, the remainder of the sentence was to be suspended. The 467 days Plaintiff had already spent in prison between arrest and sentencing was counted as time served on his grand larceny charge. Practically, then, the combination of the portion of Plaintiff's grand larceny sentence to be suspended with the portion he had already served meant he essentially had already fulfilled his term of imprisonment on the grand larceny charge as of the date of his sentencing. However, the sentencing judge also sentenced Plaintiff to a term of fifteen years of imprisonment for the burglary charged, and specifically provided that that term of imprisonment was to run consecutively from the end of the term of imprisonment on the grand larceny charge.

Plaintiff has faced a number of disciplinary actions during his time of incarceration with the South Carolina Department of Corrections ("SCDC"). Plaintiff has been charged with 49 separate disciplinary violations, and has been convicted of 34 of these charges. The majority of these have been classified as "major" violations, and include multiple violations each for actions including threatening to inflict bodily harm upon a SCDC employee or fellow inmate, possession of a weapon, and possession and use of illegal drugs. Plaintiff was also involved in an incident on February 5, 2007, where he verbally and physically assaulted a corrections officer by threatening him and throwing a trash can at him. Because of his repeated disciplinary problems, particularly actions of a threatening nature, SCDC officials reclassified Plaintiff as an inmate who presents a security threat. This means that Plaintiff is now subject to certain limitations within the facility, such as being on lock-up more often, limited opportunities for performing work or exercising, and being segregated from other parts of the general prison population.

Furthermore, Plaintiff has lost many "good time" credits he had accumulated. In the present case, due to his persistent misbehavior, Plaintiff has not received good time credits in many months, but has been stripped of the credits he had accumulated. Because of the repeated disciplinary problems, Plaintiff's projected maxout release date was recalculated and pushed back to February 15, 2011. Additionally, due to the nature of the burglary offense, Plaintiff is required to serve at least one-third of his fifteen year sentence before being eligible for parole. (Def. Ex. 5.) Plaintiff's first parole hearing was on November 16, 2005, at which time parole was denied. (Def. Ex. 6.) Plaintiff's second parole hearing was on October 24, 2007, and parole was denied again.

Prior to being held at Lee Correctional Institution, Plaintiff was incarcerated at Leiber Correctional Institution, and in his Complaint, he complains about his conditions of confinement there, including his classification as a "violent" offender, the prison's maintenance of allegedly "false information" in his institutional files, the use of excessive force in an incident between him and Officer Summerson on February 5, 2007, the denial of medical treatment, overcrowding, job discrimination, prison industry wages, and the refusal to process certain grievances. He also challenges the SCDC calculation of his sentence length. Plaintiff named as Defendants Jon Ozmint, Director of SCDC; James Sligh, Jr., Division Director of SCDC; D. Watford, Caseworker at SCDC; M. Gilmore, Head Caseworker at SCDC; Ms. NFN Rembert, Caseworker at SCC; and Ms. Jenkins, Grievance Coordinator at SCDC. He seeks

> a declaration that the acts and omissions described herein violated Plaintiff's rights under the constitution & laws of the United States, . . . nominal damages, punitive damages in the amount of $_____ against each defendant, a jury trial on all triable issues, Plaintiff's costs in this suit, any additional relief this court deems just, proper, & equitable.

(Compl. at 5) (blank in original). Defendants moved for summary judgment, and the Magistrate Judge recommended that the court grant Defendants' motion. Plaintiff objects to this recommendation.

**STANDARD OF REVIEW**

## I. The Magistrate Judge's Report and Recommendation

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.*

## II. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(C). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council*

*No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(C) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327. The court remains mindful that the Plaintiff is a *pro se* petitioner, and therefore, the pleadings are accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

## ANALYSIS

As an initial matter, the Magistrate Judge found that all Defendants are entitled to Eleventh Amendment immunity from this suit in their official capacity. Plaintiff did not object to this recommendation; therefore, the court adopts it and only reviews Plaintiff's claims against Defendants in their individual capacity. The Magistrate Judge also found Plaintiff's request for an injunction related to the conditions of his confinement at Leiber Correctional Institution moot, since Plaintiff is no longer incarcerated at that institution. The court also agrees with this recommendation and finds that claim moot.

First in his Complaint, Plaintiff alleges that SCDC Defendants Gilmore, Rembert, and Watford violated his due process rights when they allegedly failed to investigate and act upon his claims that his sentence was miscalculated, and that good time credits were being taken away from him unlawfully. He alleges that these Defendants were all personally involved somehow in calculating his maximum expiration date and in responding to grievances concerning the same. Plaintiff seeks monetary damages and a declaration that Defendants calculations are incorrect and will cause him to serve more time than he is legally required to serve. The Magistrate Judge recommended that these claims be dismissed because if the court found for Plaintiff, the finding would necessarily call into question the validity of his sentence beyond the earlier date he claims in the properly calculated expiration date of his sentence. In *Heck v. Humphries*, the United States Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486–87 (1994) (footnote omitted). This reasoning has been extended to prisoners who seek damages based on sentence calculations and loss of good time credits. In *Edwards v. Balisok*, the United States Supreme Court held, "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." 520 U.S. 641, 648 (1997). As the Magistrate Judge explained, the reasoning for these holdings is that a prisoner

should not be able to use a suit for damages to get around the procedures that have been established for challenging the lawfulness of continued confinement, such as a writ of habeas corpus.

The Magistrate Judge found that Plaintiff has not alleged or proven that any state or federal court has ever found that his sentence was miscalculated. In fact, an administrative law judge dismissed Plaintiff's appeal that his sentence was being miscalculated on February 6, 2006, in which the judge found that Plaintiff "failed to meet his burden of proof to show that the Sentence calculation is erroneous." (Pl. Ex. 16.) Based on this law and the record before the court, the court agrees with the Magistrate Judge and grants Defendants' Motion for Summary Judgment as to Plaintiff's claims that relate to the calculation of his sentence and the loss of good time credits. The Magistrate Judge also found that to the extent Plaintiff claims that his prison grievances were not properly processed or investigated, those claims are not cognizable under § 1983. The court agrees. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (1994); *see also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1991) ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment."). Therefore, the court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim that Defendants failed to process his grievances.

Next, Plaintiff complaints that there is false information in his institutional file and that although he has complained to Defendants Gilmore, Rembert, and Watford about the alleged false information, they have not corrected the information in his files. Plaintiff claims, "An

unknown individual placed an out-of-state aggravated robbery charge under an SCDC Burglary Code," and that this allegedly false information has rendered him parole ineligible. (Compl.) The Fourth Circuit has held that, in certain limited circumstances, a state prisoner has a federal due process right to have "prejudicial erroneous information expunged from [his] prison files" where he shows that: (1) the information is in his file, (2) the information is false, and (3) the information is relied upon to a constitutionally significant degree. *Paine v. Baker*, 595 F.2d at 201–02 (1979). The Magistrate Judge found that Plaintiff has not established a question of fact with regard to this claim, as a review of his NCIC rap sheet reveals that he was indeed convicted of four counts of aggravated burglary in Memphis, Tennessee in 1991. Plaintiff objects to this recommendation. He contends, "The U.S. Magistrate takes the basis of the argument out [of] context. The U.S. Magistrate speaks about 4 Agg. Burglary in Memphis, Tennesee. However, the Plaintiff discuses the Defendants holding an Agg. Robbery under a SCDC Burglary Code." (Objections at 5.)

Despite Plaintiff's Objection, his NCIC rap sheet does not show an Aggravated Robbery charge under "S.C.D.C. Burglary Code," and Plaintiff has not directed the court's attention to any specific information that proves his assertion. His rap sheet does, however, show an aggravated robbery charge stemming from an incident in Tennessee on March 27, 1990 and separate charges for aggravated burglary based on a June 14, 1991 incident. (Pl. Ex. 13.) Therefore, the court agrees with the Magistrate Judge that Plaintiff has not raised an issue of fact in this regard. Plaintiff also argues, "The U.S. Magistrate does not mention the denial of parole & label of ineligibility was based on false information." (Objections at 6.) Contrary to Plaintiff's assertion that he has been labeled parole ineligible, a letter from the South Carolina Department

8

of Probation, Parole and Pardon Services dated October 18, 2005, clearly states that a previous out-of-state offense will not affect Plaintiff's parole eligibility in South Carolina, and in fact, a review of the record shows Plaintiff has already received two parole hearings. (Pl. Ex. 6, inmate parole history) (showing Plaintiff had parole hearings on Nov. 16, 2005, and Oct. 24, 2007). Therefore, the court grants Defendants' Motion for Summary Judgment as to this clam.

Plaintiff also claims that he has been improperly placed in custody level "Security Detention" because he was designated as a member of a security threat group ("STG") and because of his lengthy disciplinary record in violation of his procedural and substantive due process rights. He contends that he is unable to exercise or to interact with other prisoners in the general population because of this segregation, and this segregation denies him rehabilitation and also violates "customary international law."

Furthermore, Plaintiff contends that he is subject to administrative segregation because he has been labeled a member of a security threat group; yet, he claims he has never been charged with an STG offense. (*Id.*) The record does reflect that Plaintiff has repeatedly shown himself to be a disruptive presence and a threat to SCDC personnel and his fellow inmates, as he has been charged with 49 separate disciplinary violations, and has been convicted of 34 of these charges. The majority of these have been classified as "major" violations, and include multiple violations each for actions including threatening to inflict bodily harm upon a SCDC employee or fellow inmate, possession of a weapon, and possession and use of illegal drugs. Plaintiff was also involved in an incident on February 5, 2007, where he verbally and physically assaulted a corrections officer by threatening him and throwing a trash can at him.

The Supreme Court has stated that the unique day-to-day problems arising in correctional

facilities do not have easy solutions, and as such, "prison administrators should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (citations omitted). Therefore, where a SCDC policy or decision is "rationally related to the furtherance of the legitimate end of prison security," the court will defer to the prison officials' judgment. *See Mickle v. Moore*, 174 F.3d 464, 469 (4th Cir. 1999). "In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed [the United States Supreme Court's] warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 540 n.23 (internal quotation omitted). Because of his repeated disciplinary problems, particularly actions of a threatening nature, SCDC officials reclassified Plaintiff as an inmate who presents a security threat, and the court finds that Plaintiff's segregation was reasonably related to Defendants' purpose of securing its prison.

To the extent Plaintiff argues that Defendants violated his liberty interest in avoiding atypical hardship experienced in administrative segregation as compared to ordinary prison life, *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997), the Magistrate Judge found that Defendants are entitled to summary judgment on this claim. He concluded that Plaintiff failed to show he was subject to much greater hardships in segregation than he would have been subject to in the general population. In his Objections, Plaintiff argues that he is has experienced significant

hardship due to being placed in administrative segregation, as he "has been in these conditions 15 months as opposed to 6 months," and has "begun undergoing mental deterioration, hearing voices, etc. when he came on lock-up." (Objections at 7.) The court agrees with the Magistrate Judge's recommendation and adopts it. As the Fourth Circuit has stated:

> Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the extreme deprivations . . . required to make out a conditions-of-confinement claim. A depressed mental state, without more, does not rise to the level of the serious or significant physical or emotional injury that must be shown to withstand summary judgment on an Eighth Amendment charge.

*Mickle v. Moore*, 174 F.3d 464, 472 (4th Cir. 1999) (internal quotation omitted) (also noting that the duration of confinement in some administrative segregation cases has been long, "but length of time is simply one consideration among many in the Eighth Amendment inquiry"). Therefore, the court finds Defendants are entitled to judgment as a matter of law as to this claim.

Plaintiff also alleges in his Complaint that he was subjected to cruel and unusual punishment stemming from a February 5, 2007 physical altercation between himself, Officer Summerson and other prison officers. (Compl. ¶¶ 23–32.) The Magistrate Judge found that Plaintiff failed to allege that any named Defendant was involved in that incident; therefore, he recommended granting Defendants judgment as a matter of law to this clam. In his Objections, Plaintiff asserts that both Defendants Ozmint and Sligh Jr., as officers of SCDC, can be held liable for the actions of Summerson and the other unknown assailants. (Objections at 4.) Contrary to Plaintiff's argument, the law is settled that a respondeat superior theory of liability is inapplicable to § 1983 cases. *Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Thus,

Defendants Ozmint and Sligh cannot be held liable for acts in which they were not personally involved.

In his Objections, Plaintiff also requests for more time to discover the unknown correctional workers involved in the dispute. The court denies this request, as the Magistrate Judge already ordered, on February 19, 2009, that Defendants provide Plaintiff with a transcript of the hearings associated with this incident. Plaintiff also asserts that "Deborah Rowe & Stan Burt" are parties to this suit who should also be responsible for the incident occurring on February 5, 2007; however, these individuals are not named parties to this action. Finally, Plaintiff argues in his Objections that he directs this cruel and unusual punishment claim at Defendant Jenkins. Plaintiff has not alleged that Ms. Jenkins was involved in the altercation that occurred on  February 5, 2007, and to the extent Plaintiff claims that she mishandled his grievance, the court found above that such a claim is not cognizable under § 1983. Therefore, the court grants Defendants' Motion for Summary Judgment as to this claim.

Plaintiff also claims that Lieber Correctional Institution was overcrowded and that such conditions resulted in a mental health patient being housed in Plaintiff's cell and also resulted in "triple-bunking." Plaintiff contends that the mental patient cellmate attacked him because he forgot to take his medication and that the overall conditions at Lieber caused him to fear for his life. (Compl. ¶¶ 38–41.) The Magistrate Judge found that none of these allegations were directed at any of the named Defendants, and to the extent Plaintiff attempts to hold Defendant Ozmint liable, as the Director of the SCDC, or Defendant Sligh liable, as the Division Directory, his claim fails because a theory of respondeat superior liability is inapplicable in § 1983 cases.

In his Objections, Plaintiff clarifies that "the exact facts of the argument" are that "Defendants housed Plaintiff in 3 man cells" and permitted "triple-celling; overcrowding; breakdown in classification, violence, increased violence, idleness." (Objections at 3.) Plaintiff objects to the Magistrate Judge's recommendation that summary judgment be granted in favor of Defendants and argues that Defendants Ozmint and Sligh can be held liable for whatever deprivation occurred until Plaintiff can discover those who are directly responsible. (Objections at 4.) While prison administrators on notice of poor prison conditions may indeed be held liable under § 1983, *Ross v. Reed*, 719 F.2d 689, 699 (4th Cir. 1983), Plaintiff has not alleged that Ozmint or Sligh propounded any official policy which caused the conditions of which he complained, nor did he allege any personal involvement of these Defendants in those conditions. Rather, he claimed that because they are in charge, they should be liable. As already explained by the court, the law does not support such a theory of liability. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights. The doctrine of respondeat superior has no application under [§ 1983]."). In his Objections, Plaintiff states that his claims based on his conditions of confinement at Lieber Correctional Institute are also directed towards Defendants Gilmore, Rembert, and Watford. Plaintiff has not explained how these Defendants, who are caseworkers for SCDC, have any control over the administration of Lieber Correctional Institute. It appears that Plaintiff named these Defendants in an attempt to save his claim. While Plaintiff cites *Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir. 1981) for the proposition that "instead of dismissing a complaint because it fails to identify certain unnamed defendants, the district court should order their disclosure or permit the plaintiff to obtain their identity through

13

discovery." In *Duncan*, unlike this case, the court was ruling on a motion to dismiss pursuant to Rule 12(b)(6). In this case, Plaintiff has already participated in discovery and has failed to allege any factual allegations or offer any evidence that the named Defendants personally controlled the conditions of his confinement. Therefore, the court grants Defendants' Motion for Summary Judgment, as none of them appear to have had any control over the conditions of confinement made available to Plaintiff at Lieber Correctional Institute.

Next, Plaintiff's Complaint alleges that Defendant Gilmore is discriminating against him by "making sure the jobs in the yard go to white prisoners or black prisoners from Charleston." (Compl. ¶ 42.) The Magistrate Judge found that Plaintiff failed to provide any evidence of this allegation; that Defendant Gilmore denied in her affidavit that she discriminated against Plaintiff; and that Plaintiff's ineligibility for placement in work programs is due to his extensive disciplinary history, convictions for major disciplinary infractions, and current placemetn on SD status as a validated member of a STG—not because he is not from Charleston. Therefore, he recommended the court grant Defendants' Motion for Summary Judgment as to this claim. Plaintiff did not object to this recommendation; therefore, the court adopts it and grants Defendants' Motion for Summary Judgment. Plaintiff also did not object to the Magistrate Judge's recommendation that the court find judgment as a matter of law in favor of Defendants as to Plaintiff's claim that he is being denied access to various rehabilitation programs in violation of the Constitution. Therefore, the court adopts this recommendation and also grants Defendants' Motion for Summary Judgment as to this claim as well.

Finally, Plaintiff claims that he should be paid "prevailing wages" for his unspecified labor in the prison industries program and that his money "was not placed in an interest bearing

escrow account." (Compl. ¶ 47.) The Magistrate Judge determined that Plaintiff did not show

how any of the named Defendants caused him to go unpaid for any work or established his

wages for the work he allegedly performed. He also found that vicarious liability does not apply

to § 1983 cases; thus, he recommended granting Defendants' Motion for Summary Judgment as

to this claim. In his Objections, Plaintiff states that he "does not argue that he was not paid;"

rather, he "argues that he was not paid in a manner specified in the statutes." (Objections at 2.)

Plaintiff further asserts that Defendant Ozmint "is the individual personally involved in

deducting percentages from prevailing wages and placing money in an interest bearing escrow

account pursuant to S.C. Code Ann. §§ 24-3-40 and 24-3-430. (*Id.*) Section 24-3-40 of the South

Carolina Code does state:

> (A) . . . the employer of a prisoner authorized to work at paid employment in the
> community under Sections 24-3-20 to 24-3-50 or in a prison industry program
> provided under Article 3 of this chapter shall pay the prisoner's wages directly to
> the Department of Corrections.
>
> The ***Director of the Department of Corrections shall deduct*** the following
> amounts from the gross wages of the prisoner:
>
> (5) Ten percent must be held in an interest bearing escrow account for the benefit
> of the prisoner.

S.C. Code Ann. § 24-3-40(A)(5) (emphasis added).

Since this claim alleges a violation of a state statute, it does not satisfy § 1983's

requirement that Plaintiff allege the deprivation of a constitutionally protected right or federal

statute. While the court can exercise supplemental jurisdiction over claims that are so related to

claims in the action within the court's original jurisdiction that they form part of the same case or

controversy, it dismisses this claim since it has already found judgment as a matter of law as to

Plaintiff's federal claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if—the district court has dismissed all claims over which it has original jurisdiction."). As such, the court does not address Plaintiff's claim that Defendant Ozmint violated several South Carolina statutes and dismisses it, without prejudice. See § 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [supplemental jurisdiction], shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").[1]

Lastly, Defendants moved to have this action denominated a "strike" within the meaning of the Prison Litigation and Reform Act, and the Magistrate Judge concluded that such a designation is appropriate. The court declines to adopt this recommendation only because it elected not to address Plaintiff's claim that Defendant Ozmint violated S.C. Code Ann. § 24-3-40 by failing to properly administer Plaintiff's prison industry wages.

---

[1] Plaintiff did not object to the Magistrate Judge's finding that all Defendants are entitled to qualified immunity and that Defendants' Motion for Summary Judgment could also be granted on this alternative ground. Therefore, the court adopts this finding in this Order as well.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**, except as to Plaintiff's claim that Defendant Ozmint violated S.C. Code Ann. § 24-3-40 by failing to properly administer Plaintiff's prison industry wages. The court dismisses that claim, without prejudice, for lack of jurisdiction. This order renders all other outstanding motions **MOOT**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**September 29, 2009**
**Charleston, SC**